JOHN GEIB, Administrator, *vs.* H. T. REYNOLDS and others, impleaded, etc.

June 28, 1886.

**Payment by Note—Burden of Proof.**—A promissory note given for an antecedent debt does not discharge the debt, unless expressly given and received in absolute payment; and the burden of proof is upon the party asserting the fact to show that it was so given and received.

**Mortgage—Requisites of Discharge.**—A mortgage secures the debt, and not the evidence of it, and nothing short of actual payment of the debt, or an express release, will operate to discharge the mortgage.

**Same—Record as Notice—Note and Mortgage in Mortgagor's Possession.**—The record of an unsatisfied mortgage is constructive notice of all the rights and equities of the mortgagee under it. Hence, though a person finds a note and mortgage in the possession of the mortgagor, he has no right to assume from that fact alone, without examination of the

records, that the mortgage has been satisfied; and if he does so, the mortgage being undischarged of record, he takes subject to the equities of the mortgagee.

Same—Setting Aside Release—Rights of Second Mortgagee.—A subsequent mortgagee, who became such *anterior to the discharge of a prior mortgage*, not having acted upon the faith of that discharge, cannot claim to be injured by setting aside such subsequent release, and restoring the lien of the prior mortgage.

Same—Release by Mistake—Equitable Relief.—If the holder of a mortgage take a new mortgage as a substitute for a former one, and releases the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, equity will, in the absence of some special disqualifying circumstance, restore the lien of the first mortgage.

Same—What Deemed a Mistake.—The fact that the mortgage was released in ignorance of the existence of the intervening lien is deemed such a mistake of fact as to entitle the party to relief, although the intervening lien was of record at the time.

Equity—Mistake—Relief, when Granted.—Equity will grant relief on the ground of mistake, not only when it is expressly proved, but also when it may be inferred from the nature of the transaction.

Plaintiff, as administrator of Diedrich Thole, who died October 2, 1882, brought this action in the district court for Le Sueur county, praying that a mortgage of certain described lands in that county, made by the defendant Frederick Dieling and his wife to the intestate May 5, 1881, and recorded December 21, 1881, be adjudged to be a lien on the mortgaged premises prior to the liens of certain mortgages of the same premises made by Dieling and wife to the defendants Reynolds and Benjamin V. Quackenbush, respectively, in September, 1881, and recorded in the same month.

The action was tried by *Macdonald*, J., who found the following facts:

On May 5, 1877, Dieling and wife, to secure an indebtedness to Thole, executed and delivered to him a mortgage on the lands described in the complaint, to secure the payment of $2,000, (the amount of the debt,) "according to the condition of a certain promissory note for said amount, due and payable three years from date, with ten per cent. interest per annum until fully paid, bearing even date herewith." This

mortgage was duly recorded in the registry of deeds of Le Sueur county, July 9, 1877.

On May 5, 1881, the debt being unpaid, Thole and Dieling agreed that the time for payment should be extended five years and the rate of interest reduced from ten to eight per cent. per annum, and that a new mortgage should be made in exchange for that held by Thole. Accordingly, in execution of this agreement, Dieling and wife, on the same day, executed and delivered to Thole a mortgage of the same land, bearing date May 5, 1881, with condition for the payment of "the sum of two thousand dollars, according to the condition of one certain promissory note for said amount, due three years from date thereof, with interest at the rate of 8 per cent. per annum for two years and 7 per cent. per annum for third year and thereafter, interest payable annually, bearing even date herewith."

At the same time with the execution and delivery of the new note and mortgage, Thole delivered up to Dieling the old note and mortgage. The purpose of the transaction was "to continue the same debt and security for the same."

Thole was then 82 years old, and was feeble and infirm. He resided in Sibley county about 25 miles from the county seat of Le Sueur county.

Thole did not record the new mortgage, or satisfy the old mortgage of record, until December 21, 1881, after the execution and record of the mortgages next to be mentioned.

On September 8, 1881, Dieling and wife borrowed of defendant Reynolds, (who resided in New York,) through the latter's agent, the defendant Livingston Quackenbush, who resided in Le Sueur county, the sum of $2,000, and to secure its repayment, executed and delivered to Reynolds a mortgage for that sum on the same premises mortgaged to Thole. This mortgage was duly recorded September 20, 1881.

On September 8, 1881, Dieling also borrowed of the defendant Benjamin V. Quackenbush, (also a resident of New York,) through his agent, the same Livingston Quackenbush, the sum of $1,100, and, to secure repayment, Dieling and his wife executed and delivered to Benjamin V. a mortgage for $1,100 on the same premises mortgaged to Thole. This mortgage was duly recorded September 20, 1881.

.At the time of obtaining those loans, Dieling produced and exhibited to Livingston Quackenbush, the agent of the lenders, his first note and mortgage to Thole, (which had, as before stated, been surrendered to him,) and told Quackenbush that the mortgage was satisfied, and the mortgage note and debt were paid. And the 'latter, in making the loans and accepting the mortgages securing them, relied wholly on these statements of Dieling.

After these two mortgages had been made and recorded, and on December 21, 1881, Thole caused to be recorded in the registry of deeds his mortgage of May 5, 1881, and also a satisfaction of his mortgage from Dieling of May 5, 1877. It was not made to appear at the trial that when he caused these instruments to be recorded, Thole knew or had notice of the execution or record of the mortgages to Reynolds and Quackenbush. "It manifestly was not the intention of said Diedrich Thole, in accepting said second mortgage to him and satisfying the first mortgage to him, to release or surrender his lien and security for his said $2,000 upon said land, but merely to continue the time of the payment of the same at the said reduced rate of interest."

On November 16, 1882, the Quackenbush mortgage was foreclosed by sale under the power contained in it, and the land sold to Livingston Quackenbush individually, for $2,347.70, he receiving the proper certificate, which was recorded November 16, 1882. But the only money paid the sheriff was the amount of his fees and expenses.

The cash market value of the land is $2,500.

As a conclusion of law, the court decided that the last Thole mortgage (of May 5, 1881) was entitled to priority over the Reynolds and Quackenbush mortgages, and ordered judgment accordingly. The defendants (other than Dieling) appeal from the judgment and from an order refusing a new trial.

*Cadwell & Parker* and *H. J. Peck,* for appellants, cited

2 Pom. Eq. Jur. § 859; 1 Story Eq. Jur. §§ 146, 148; *Battenhausen* v. *Bullock,* 8 Ill. App. 312; *Robinson* v. *Sampson,* 23 Me. 388; 2 Jones, Mortg. §§ 927, 966; *Miller* v. *Wack,* 1 N. J. Eq. 204; *Banta.* v. *Vreeland,* 15 N. J. Eq. 103; 1 Jones Mortg. § 605, and cases cited; *Frazee* v. *Inslee,* 2 N. J. Eq. 239; *Place* v. *Johnson,* 20 Minn. 198,

*(219, 229;) Daly* v. *Proetz,* Id. 363, (411;) *Guernsey* v. *Am. Ins. Co.,* 17 Minn. 83, (104;) *Trust Co.* v. *Farrar,* 53 Vt. 542.

*S. & O. Kipp,* for respondent.

MITCHELL, J. The application of a few familiar principles to the facts of this case furnishes an easy solution of the points raised on this appeal.

1. A promissory note given for an antecedent debt does not discharge the debt, unless expressly given and received as absolute payment; and the burden of proof is upon the party asserting the fact to show that it was so given and received, the presumption being to the contrary. 2 Pars. Cont. 756; Leake, Cont. 890; *Nightingale* v. *Chafee,* 11 R. I. 609; *Hutchinson* v. *Swartsweller,* 31 N. J. Eq. 205. See, also, *Keough* v. *McNitt,* 6 Minn. 357, (513;) *Goenen* v. *Schroeder,* 18 Minn. 51, (66;) *Donnelly* v. *Simonton,* 13 Minn. 278, (301.)

In this case there is no evidence that plaintiff's intestate, Thole, took the new note and mortgage in *payment* of the debt secured by the first. It is true that Dieling, the mortgagor, says he "gave Thole a new note and mortgage in payment of the first note and mortgage he held;" but this is a mere conclusion, without a fact to support it. On the contrary, the transaction shows clearly that the new note and mortgage were given merely for the purpose of securing the *same debt,* on longer time, and at a lower rate of interest.

2. A mortgage secures a debt, and not the evidence of it. Hence no change in the form of the evidence of the debt, or in the mode or time of payment,—in fact, nothing short of actual payment of the debt, or an express release,—will operate to discharge the mortgage. The mortgage remains a lien until expressly released, or until the debt it was given to secure is paid. Jones, Mortg. §§ 924, 925, and cases cited. This is so both as between the parties and as to a subsequent purchaser. Jones, Mortg. § 927; *Brinckerhoff* v. *Lansing,* 4 John. Ch. 65, (8 Am. Dec. 538.) Of course we are not speaking of cases where the doctrine of estoppel by conduct would apply.

3. Although Livingston Quackenbush, the agent of the subsequent mortgagees, Reynolds and Benjamin Quackenbush, found the first "Thole" note and mortgage in the hands of Dieling, the mortgagor, the mortgage remaining unsatisfied of record, he had no right to as-

sume, without investigation, that it was paid. The record of the unsatisfied mortgage was constructive notice to him of all the rights and equities of the mortgagee under it. It was sufficient to put him upon inquiry, and whatever puts a person upon inquiry, is, in equity, notice to him of all the facts which such inquiry would have disclosed. If he saw fit to act without an examination of the records, which would have disclosed the fact that the mortgage was not discharged, he did so at his peril. Jones, Mortg. § 927; *Bolles* v. *Chauncey*, 8 Conn. 389; *Harrison* v. *New Jersey R. & T. Co.*, 19 N. J. Eq. 488; *Boxheimer* v. *Gunn*, 24 Mich. 372.

4. Hence the subsequent mortgagees in this case, having become such *anterior* to the cancellation of the first Thole mortgage, are not innocent purchasers without notice, and stand in no better position than Dieling, the mortgagor. They acquired their rights *before* the discharge of record of the "Thole" mortgage, and not upon the faith of that discharge. They are not, therefore, in position to insist that they are injured by annulling that discharge. When a prior mortgage has been, by fraud or mistake, discharged of record, a subsequent mortgagee, who became such *anterior to such discharge*, cannot claim to be injured by setting aside the release, and restoring the mortgagee to his rights. *Downer* v. *Miller*, 15 Wis. 612; *Robinson* v. *Sampson*, 23 Me. 388; *Cansler* v. *Sallis*, 54 Miss. 446.

5. It is a familiar rule that if the holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, equity will, in the absence of some special disqualifying fact, restore the lien of the first mortgage, and give it its original priority. Jones, Mortg. § 971; *Bruse* v. *Nelson*, 35 Iowa, 157; *Cobb* v. *Dyer*, 69 Me. 494; *Hutchinson* v. *Swartsweller, supra; Robinson* v. *Sampson, supra; Barnes* v. *Mott*, 64 N. Y. 397; Pom. Eq. Jur. § 849.

6. The fact that the mortgage was released in ignorance of the existence of the intervening lien is deemed such a mistake of fact as to entitle the party to relief, and this although such intervening lien was of record at the time. *Bruse* v. *Nelson, supra; Cobb* v. *Dyer, supra; Banta* v. *Vreeland*, 15 N. J. Eq. 103.

7. Mistake may not only be expressly established, but it may be inferred .from circumstances, and from the nature of the transaction. In this case, Thole being dead, there was no evidence that he released his original mortgage in ignorance of these intervening mortgages, except as it may be inferred from the transaction. But while a court cannot infer facts not proved, yet it is at liberty to draw all the inferences which logically and naturally follow from the facts proved. It is not to be presumed that Thole would have discharged his first mortgage, and accepted the second one as security for $2,000, had he known of the existence of these other mortgages, amounting to $3,100, upon property worth only $2,500. The court had a perfect right to infer that he would not have made this release had he known of these intervening liens, and a court of equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but also when it is fairly implied from the nature of the transaction. 1 Story, Eq. Jur. § 162; *Barnes* v. *Mott, supra; Hyde* v. *Tanner*, 1 Barb. 75; *Cobb* v. *Dyer, supra; Stimpson* v. *Pease*, 53 Iowa, 572, (5 N. W. Rep. 760;) *Wyche* v. *Greene*, 11 Ga. 159, 172; *Bruce* v. *Bonney*, 12 Gray, 107, (71 Am. Dec. 739.)

The court below was therefore right in restoring the lien of .plaintiff's mortgage, and giving it priority over those of defendants.

Judgment affirmed.